NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RUTHANN BECKER, et al., *Plaintiffs/Appellants*,

*v.*

ROBERT LIU, et al., *Defendants/Appellees*.

No. 1 CA-CV 17-0515
FILED 8-7-2018

Appeal from the Superior Court in Maricopa County
No. CV2015-001904
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Martineau & Johnson, P.L.L.C., Mesa
By J. Stanley Martineau, W. Raymond Johnson, III
*Counsel for Plaintiffs/Appellants*

Perry Childers Hanlon & Hudson PLC, Phoenix
By Michael J. Childers, Christopher J. Bork
*Counsel for Defendants/Appellees*

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Peter B. Swann joined.

**H O W E**, Judge:

¶1        Ruthann Becker, as personal representative of the Estate of Luigi Rosa, appeals the summary judgment in favor of Robert and Gina Liu on claims that the Lius were liable for injuries their dog caused Rosa. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        The facts are undisputed.[1] Rosa house-sat for the Lius and cared for their two dogs while the Lius were on a 16-day vacation during June and July 2014. On July 11, the last day of the Lius' trip, one of the Lius' dogs got tangled in Rosa's legs, causing Rosa to trip and fall. Rosa suffered a traumatic cervical fracture that rendered him quadriplegic. The Lius found Rosa later that day when they arrived home from their vacation.

¶3        Rosa sued the Lius and made three claims that they were liable for his injuries. First, the Lius were strictly liable under A.R.S. § 11–1020, which provides that a dog owner or the person responsible for a dog has "full responsibility" for any injury to a person or damage to any property the dog may inflict "while at large." Second, the Lius were strictly liable at common law under Restatement (Second) of Torts § 509, which provides that "[a] possessor of a domestic animal" is liable for harm the animal does to another if the possessor knows or has reason to know that the animal "has dangerous propensities abnormal to its class[.]" Third, the Lius were liable in negligence because the dog was "likely to do harm unless controlled" and the Lius did not take reasonable care to control or confine the dog.

¶4        The Lius moved for summary judgment on all the claims. Rosa cross-moved for partial summary judgment, arguing that the evidence indisputably established that the dog had been "at large" under A.R.S. § 11–1020. The trial court granted the Lius summary judgment on all claims and denied Becker's cross-motion. The court ruled that the strict liability claims failed because the undisputed evidence showed that the dog was inside the house and not "at large" as A.R.S. § 11–1020 required and that the dog had

---

[1]        Because Rosa did not specify the paragraphs in the Lius' statement of facts that he disputed, *see* Ariz. R. Civ. P. (former) 56(c)(3) (current 56(c)(3)(B)(i)), the trial court deemed these facts undisputed. Rosa has not challenged this ruling on appeal. *See Carrillo v. State*, 169 Ariz. 126, 132 (App. 1991).

no "dangerous propensities abnormal to its class." The court also ruled that the negligence claim failed because the dog was not "abnormally dangerous."

¶5        Becker moved for reconsideration on the court's ruling that the negligence claim failed because no evidence showed that the dog was "abnormally dangerous." Becker noted that proof that an animal was "abnormally dangerous" had been a requirement of a negligence claim under Restatement (First) of Torts § 518, but negligence claims involving animals were now governed by Restatement (Second) of Torts § 518, which removed the requirement of "abnormal dangerousness."

¶6        The court agreed that it had improperly applied the prior § 518 rather than the current § 518, but nevertheless reaffirmed its grant of summary judgment on the negligence claim on a ground that was dispositive regardless which version of § 518 applied. Under both versions, only possessors or harborers of domestic animals were liable for negligently failing to prevent them from harming others; the court found that because the Lius were away on vacation and had entrusted the care and custody of the dog to Rosa, they did not possess or harbor the dog when it caused Rosa injury. The court then entered a final judgment and Becker timely appealed.[2]

## DISCUSSION

¶7        Becker argues that the trial court erroneously granted the Lius summary judgment on her claims. "We review a grant of summary judgment de novo and view the facts in the light most favorable to the non-moving party." *Wickham v. Hopkins*, 226 Ariz. 468, 470 ¶ 7 (App. 2011). Summary judgment is appropriate when no material issues of fact exist and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56; *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). Because Becker's claims fail under the undisputed facts, the trial court correctly granted summary judgment.

### 1. Strict Liability

¶8        Becker contends that the trial court erred in granting summary judgment on the strict liability claims. Becker first argues that

---

[2]        Rosa passed away one week after judgment was entered. Rosa's estate was substituted as the plaintiff and Becker filed a notice of appeal as personal representative.

contrary to the court's ruling, whether the dog was "at large" under A.R.S. § 11–1020 was factually in dispute. We review statutory construction and interpretation issues de novo. *Green Cross Med., Inc. v. Gally*, 242 Ariz. 293, 295 ¶ 5 (App. 2017). The Court's primary goal in interpreting statutes is to effectuate the legislature's intent. *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017). A statute's language is the most reliable indicator of its meaning. *See Sempre Ltd. P'ship v. Maricopa Cty.*, 225 Ariz. 106, 108 ¶ 5 (App. 2010). When the plain text of a statute is clear and unambiguous the court need not resort to secondary methods of statutory interpretation. *State v. Christian*, 205 Ariz. 64, 66 ¶ 6 (2003).

**¶9** Becker argues that a dog is "at large" if it can "inhabit the same space[]" as a person other than its owner. But this interpretation contradicts the plain language of the definition of "at large." A dog is "at large" for purposes of A.R.S. § 11–1020 if it is "neither confined by an enclosure nor physically restrained by a leash." A.R.S. § 11–1001(2). The dog was inside the house with Rosa when Rosa was injured, and a house is ordinarily understood as a type of enclosure. *See Enclose*, Black's Law Dictionary (10th ed. 2014) (defining "enclose" as "[t]o surround or encompass"); *see also Enclosure*, *id.* (defining "enclosure" as "[l]and surrounded by some visible obstruction"); *cf. Silverman v. United States*, 365 U.S. 505, 511 n.4 (1961) (characterizing a person's house in the context of the Fourth Amendment as an "insulated enclosure"); *Mulcahy v. Damron*, 169 Ariz. 11, 12 (App. 1991) (holding that a dog in a bathtub in a grooming room of a pet hospital was not "at large" when injury occurred). To hold as Becker suggests would mean that a dog would be "at large" any time it was not leashed or caged, even if it were in a house or a fenced dog park. Such an interpretation contravenes the plain language of A.R.S. § 11–1001(2). Therefore, the trial court did not err in granting summary judgment on this claim.

**¶10** Becker next argues that the trial court erred in granting summary judgment on the common-law strict liability claim. Becker relies on Restatement (Second) of Torts § 509(1), which provides that a "possessor of a domestic animal" that the possessor "knows or has reason to know has dangerous propensities abnormal to its class" is subject to liability for harm the animal does to another, even when the possessor "has exercised the utmost care" to prevent the animal from doing the harm. Liability is limited, however, to harm that results from the "abnormally dangerous propensity." Restatement (Second) of Torts § 509(2). Becker argues that a factual dispute exists whether the dog had dangerous propensities abnormal to its class because the dog had "unpredictable, attention-seeking

behaviors," such as running around a person or getting underfoot if ignored.

¶11 Becker points to no authority, however, that such behaviors of a dog constitute a "dangerous propensity." The mere fact that a person suffered an injury caused by a dog's physical actions is not proof that the dog had a "dangerous propensity." *See James v. Cox*, 130 Ariz. 152, 154 (App. 1981) (evidence that a dog had a "sensitive head" from being kicked by a horse but had never bitten anyone before current incident did not show that the dog had abnormally dangerous propensities); *Hartsock v. Bandhauer*, 158 Ariz. 591, 594 (App. 1988) (testimony that "the dogs occasionally fought with each other and would snarl, growl and bite each other" and that the owner warned children "not to come in the yard because the dogs might bite them" was insufficient to show abnormally dangerous propensities when child was bitten); *see also Brady v. Skinner*, 132 Ariz. 425, 426 (App. 1982) (evidence that mule was "ornery" and "did not like anybody and would put his ears back and shy away whenever anyone got close to him[]" was insufficient to show dangerous propensities when the mule kicked child). With no evidence that the dog had "abnormally dangerous propensities," the trial court properly granted summary judgment on this claim.

### 2. Negligence

¶12 Becker argues that the trial court erred in granting the Lius summary judgment on the negligence claim on the ground that the undisputed evidence showed that the Lius were not the "possessors" or "harborers" of the dog under Restatement (Second) of Torts § 518 when the dog caused Rosa's injury. That provision states that a person who "possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous[]" is liable for the harm the animal causes if he is negligent in failing to prevent the harm. *Id.* Becker argues that because the Lius owned the dog and hired Rosa to watch the dog at the Lius's house, the Lius "possessed" and "harbored" the dog and were liable when the dog injured Rosa.

¶13 We need not resolve the meaning of "possess" or "harbor" under § 518, however, because we can affirm the grant of summary judgment on another ground. *See KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 329 ¶ 14 (App. 2014) ("We will affirm summary judgment if it is correct for any reason supported by the record, even if not explicitly considered by the superior court."). Even assuming that the Lius possessed or harbored the dog, the trial court nevertheless correctly granted

summary judgment because nothing in the undisputed facts shows that the Lius were negligent in protecting Rosa from injury. Although whether an alleged tortfeasor has breached a duty and caused injury are generally fact issues for a jury to determine, summary judgment is appropriate "if no reasonable juror could conclude that the standard of care was breached or that the damages were proximately caused by the defendant's conduct." *Gipson v. Kasey*, 214 Ariz. 141, 143 n.1 ¶ 9 (2007).

¶14        Under the undisputed facts here, no reasonable juror could find that the Lius breached their standard of care to Rosa. A dog owner has a duty to take reasonable precautions to prevent a foreseeable risk of injury by a dog. *Medlyn v. Armstrong*, 621 P.2d 81, 82 (Or. App. 1980); *see also Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 565 ¶ 13 (2018) (foreseeability may be used to determine breach and causation). The issue is whether the Lius "knew or had reason to know that the dog, if not controlled or confined, might cause the injury" Rosa suffered. *See Medlyn*, 621 P.2d at 82. Nothing in the undisputed facts shows that the Lius knew or should have known that the dog might injure Rosa.

¶15        Rosa began house-sitting and caring for both of the Lius' dogs while the Lius traveled beginning 2007. Rosa house-sat in December 2013 and March 2014 without incident. Both Rosa and Becker were comfortable staying with the dogs and would bring their small grandchildren to accompany them. Neither Rosa nor Becker ever complained about the dogs' behavior, and no evidence showed that the dog that caused Rosa's injury ever injured anyone. At the time of the accident, Rosa had been caring for the dog for 15 days; the Lius spoke to Rosa several times, and aside from air-conditioning and pool issues, Rosa reported that everything was fine with the house and dogs. At the time of the accident, the dog was sitting with Rosa on the sofa and followed Rosa to the pantry as he was getting food for the dogs, and the dog tripped Rosa in a rush to get at the food. Although the accident and the consequent injury was tragic, the facts show that it was the result of normal dog behavior and was not the fault of the Lius' failure to adequately train the dog or advise Rosa of the necessary care to be taken around the dog. Because Rosa did not show that the Lius knew or reasonably could have anticipated that the dog might cause the injury he incurred, summary judgment for the Lius was proper.

**CONCLUSION**

¶16         For the foregoing reasons, we affirm. We award costs to the Lius upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA

7